UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AIMEE DEREZIC**, *et al*.

      **Plaintiffs,**

   v.                               Case No. 2:14-cv-51
                                         JUDGE SMITH
                                         Magistrate Judge King

**OHIO DEPARTMENT OF EDUCATION**, *et al*.,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants Ohio Department of Education and Richard A. Ross's Motion to Dismiss (Doc. 16). Plaintiffs Birks, Coleman, Cuturic, Dautovic, Derezic, Flaisman, Geiger-Dugandzic, Grubach, Hargrove, Hill, Kilroy, Loscei, Mallory, Nosse, Pelima, Pesek, Quirarte, Moquemore, Rossman, and Zagar ("Plaintiffs") filed a Memorandum in Opposition (Doc. 19), to which Defendants have replied (Doc. 20). The issues before the Court are fully briefed and ripe for review.

        **I.**     **FACTUAL BACKGROUND**

This case centers on the decision of the Ohio Department of Education ("ODE") to terminate Plaintiffs' EdChoice Scholarships for the 2013-2014 school year, and the alleged inability of Plaintiffs to meaningfully contest this termination.

Plaintiffs are the parents of minor children enrolled at various private schools in Euclid, Ohio.[1] (Doc. 15, Am. Compl. at ¶ 1). For the 2012-2013 school year, Plaintiffs' private school tuition was provided as part of the Educational Choice Scholarship Pilot Program. (*Id*. at ¶ 2).

---

[1] For ease of reference purposes, the Court's use of the appellation "Plaintiffs" throughout this Opinion and Order will include the named parents and their children, identified in the Complaint by their initials.

Case: 2:14-cv-00051-GCS-NMK Doc #: 23 Filed: 08/25/14 Page: 2 of 16  PAGEID #: 292

This program, established by Ohio Revised Code Section 3310.02, is administered by the ODE. *See* Ohio Rev. Code § 3310.02(A). The program essentially allows students who attend or are assigned to attend "EdChoice eligible" public schools to apply for a "voucher" or "scholarship" which can be used to cover the student's tuition at an alternate private school of their choosing. (*See generally* Doc. 15, Ex. S, EdChoice Scholarship Program Manual). The ODE determines which schools are "EdChoice eligible" by considering a host of factors such as whether the school has a low performance index score or has been on Academic Emergency or Academic Watch in recent years. (*See id.* at 4; Doc. 15, Ex. 1, Designated Schools List). Prior to the 2012-2013 school year, the ODE deemed four Euclid City School District elementary schools "EdChoice eligible," including the schools to which Plaintiffs believed they were assigned. (*See* Doc. 15, Ex. 1, Designated Schools List at 2).

After reviewing their applications, the ODE awarded all Plaintiffs EdChoice scholarships for the 2012-2013 school year. (*See* Doc. 15, Ex. T, Letter Re: EdChoice Scholarships). However, around this same time, Euclid was in the process of closing, opening, consolidating, and reconfiguring boundaries for their six elementary schools. (*See* Doc. 15, Ex. C, E-mail Re: Euclid IRN Request). In light of the confusion and miscommunication about which of the new elementary schools were EdChoice eligible and which were not, the ODE conducted a review of all scholarship awards for Euclid City School District students. (*See* Doc. 15, Ex. E, E-Mail Re: Eligibility Confusion; Doc. 15, Ex. K, Mallory Termination Letter). After this review, Plaintiffs all received letters notifying them that while their EdChoice scholarship award remained valid for the 2012-2013 school year, they would not be eligible for the program in 2013-2014.[2] (*See, e.g.*, Doc. 15, Ex. J, Derezic Termination Letter; Doc. 15, Ex. K, Mallory Termination Letter;

---

[2] In Plaintiffs' Complaint, Plaintiffs separate themselves into two groups based on different factual underpinnings: the "Derezic Plaintiffs" and the "Nosse Plaintiffs." While these designations may be helpful in other contexts, the Court finds it unnecessary to differentiate these two groups for the purpose of this motion.

2

Doc. 15, Ex. P, Nosse Termination Letter). In these letters, the ODE explained that the EdChoice schools Plaintiffs had been assigned to originally (forming the basis of their initial eligibility determination) had since been closed, and the new schools to which Plaintiffs were assigned were not EdChoice eligible.[3] (*See id.*). Plaintiffs requested the ODE to reconsider its termination decisions pursuant to Ohio Administrative Code Section 3301-11-14. (*See, e.g.*, Doc. 15, Exhibit Q, Nosse Request; Doc. 15, Ex. L, Derezic Request). The ODE denied all of Plaintiffs' requests for reconsideration by letter. (*See, e.g.*, Doc. 15, Ex. M, Derezic Denial; Doc. 15, Ex. R, Nosse Denial; *see also* Doc. 15, Ex. T, Letter Re: EdChoice Scholarships).

After receiving the ODE's denial letters, Plaintiffs filed a Complaint against the ODE and Dr. Richard A. Ross, ODE's Superintendent of Public Instruction. (Doc. 1, Compl.). Plaintiffs subsequently filed an Amended Complaint, which presently controls this action. (Doc. 15, Am. Compl.). In their Amended Complaint, Plaintiffs allege the ODE and Ross violated their constitutional due process rights by depriving them of their EdChoice scholarships "without a meaningful opportunity to challenge the denial, and without sufficient due process protections to prevent errors." (*Id.* at ¶ 103). Specifically, Plaintiffs contend that the reconsideration mechanism set forth in Ohio Administrative Code Section 3301-11-14 is "constitutionally inadequate" as it did not allow Plaintiffs to "be heard at a meaningful time and in a meaningful manner." (*Id.* at ¶ 104). Plaintiffs also assert that the termination of their EdChoice scholarships was in direct contravention of Ohio Revised Code Section 3310.03(E). (*Id.* at ¶ 117). Based on these causes of action, Plaintiffs ask the Court to (1) issue an injunction to enjoin the ODE and Ross from violating Plaintiffs' due process rights; (2) declare that the ODE's termination

---

[3] Plaintiffs dispute the manner in which Euclid City School District and the ODE determined the eligibility of the new schools, i.e. by improperly transferring Information Retrieval Numbers. However, Plaintiffs' argument about this convoluted process and the facts supporting it are not pertinent to the motion pending before the Court. The Court therefore finds it unnecessary to address them in depth here.

decisions were inconsistent with Ohio Revised Code Section 3310.02(E); and (3) award Plaintiffs costs and expenses in bringing the action, as well as attorney's fees.

The ODE and Ross filed a Motion to Dismiss (Doc. 16) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asking the Court to dismiss Plaintiffs' case for lack of jurisdiction. In their motion, the ODE and Ross assert that all of Plaintiffs' claims against them are barred by the Eleventh Amendment. Plaintiffs, however, contend they are able to sustain their claims based on the *Ex parte Young* exception to sovereign immunity.

## II. STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' claims for lack of jurisdiction pursuant to Federal Rule of Procedure 12(b)(1). Dismissal pursuant to Rule 12(b)(1) may be warranted if a party brings a claim in federal court that does not satisfy statutory or constitutional jurisdictional requirements. Where, as here, the jurisdictional dispute is a "facial attack" on the pleadings, i.e. the determination of jurisdiction does not entail the resolution of disputed facts, the Court must consider all allegations in the Complaint as true. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Ultimately, though, Plaintiffs shoulder the burden of proving jurisdiction in order to survive the motion. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

## III. DISCUSSION

The ODE and Ross allege the Eleventh Amendment divests this Court of jurisdiction to consider Plaintiffs' claims. Plaintiffs disagree, citing the exception to sovereign immunity set forth in *Ex parte Young*, 209 U.S. 123 (1908).

4

A.      **The General Standard: Sovereign Immunity and *Ex parte Young***

Generally, the Eleventh Amendment prohibits a citizen of a state from suing that state or one of its agencies in federal court. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). This immunity also protects state officials sued in their official capacities from federal claims for money damages. *Id*. Accordingly, sovereign immunity essentially acts as "a limitation of federal judicial power, that is, on the constitutional grant of jurisdiction to the federal courts." *Jordon v. Gilligan*, 500 F.2d 701, 706 (6th Cir. 1974). This Court has recognized three major exceptions to this grant of immunity, however: (1) waiver by the state; (2) abrogation by Congress; and (3) application of the *Ex parte Young* doctrine by the courts. *Campbell v. Miller*, 835 F. Supp. 2d 458, 466 (S.D. Ohio 2011) (Smith, J.); *see also S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the last exception, the applicability of the *Ex parte Young* doctrine, is at issue here.

In *Ex parte Young*, the United States Supreme Court held that the Eleventh Amendment did not bar a suit alleged against a state official, in his official capacity, for prospective injunctive relief, thereby carving out a narrow exception to sovereign immunity. 209 U.S. 123, 150-156 (1908). In order for this exception to apply, a plaintiff's claim must "seek prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). Claims seeking retroactive, monetary relief are barred by the Eleventh Amendment and not subject to the *Ex parte Young* exception. *Id*.

While these general principles underlying the exception are well-established, courts must determine whether a claim falls within the bounds of *Ex parte Young* on a claim-by-claim basis. *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 280 (1997) ("This case-by-case approach to the *Young* doctrine has been

5

evident from the start."). In so determining, the Court's focus must be "on the allegations only; it does not include an analysis of the merits of the claim." *Hendricks v. Kasich*, No. 2:12-cv-729, 2014 WL 2006800, at *15 (S.D. Ohio May 16, 2004) (Kemp, J.) (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) (internal quotations omitted). The Court will address each of Plaintiffs' causes of action in turn.

### B. Plaintiffs' Declaratory Judgment Action

In their Complaint, Plaintiffs ask the Court to issue a declaratory judgment "finding that Defendants' decision to terminate each Plaintiff's scholarship is inconsistent with Revised Code Section 3310.03(E) and is therefore unlawful." (Doc. 15, Am. Compl. at ¶ 117). Section 3310.03 is a state statute outlining the eligibility requirements for students seeking to participate in Ohio's Educational Choice Scholarship Pilot Program. Therefore, Plaintiffs' prayer for relief essentially asks this Court to declare that a state official has violated state law.

Courts have justified the *Ex parte Young* exception as a necessary means "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (quoting *Ex parte Young*, 209 U.S. 123 (1908)). Thus, when no federal interests are implicated, "the entire basis for the doctrine of *Young* . . . disappears." *Id*. at 106 (holding the *Ex parte Young* exception did not apply to claims "against state officials on the basis of state law"). Consequently, all state law claims involving a state official's non-compliance with state law, whether retrospective *or* prospective, are barred by the Eleventh Amendment. *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) ("[B]ecause the purposes of *Ex parte Young* do not apply to a lawsuit designed to bring a State into compliance with state law, the States' constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether

6

those claims are monetary or injunctive in nature."). This principle applies to state-law claims brought into federal court under pendent jurisdiction. *Pennhurst*, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.").

As stated above, Plaintiffs ask the Court to declare that Defendants' decision to terminate Plaintiffs' scholarships were inconsistent with Ohio Revised Code Section 3310.02(E). Plaintiffs' basis for declaratory judgment here is an Ohio statute, not the United States Constitution. Plaintiffs, in essence, ask the Court to instruct Ross how to conform his actions to state law. This is precisely the type of sovereign invasion that "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S., at 106. The Court therefore finds the *Ex parte Young* exception does not apply to Plaintiffs' declaratory judgment claim as set forth in Count II of their Amended Complaint, and that the Eleventh Amendment bars the Court from considering this claim. Defendants' Motion to Dismiss is well-taken as to Count II of Plaintiffs' Amended Complaint.

**C.**     **Plaintiffs' Due Process Claim**

Unlike their declaratory judgment action, Plaintiffs' due process claim concerns an alleged violation of federal law, namely the Due Process Clauses of the Fifth and Fourteenth Amendments. (Doc. 15, Am. Compl. at ¶¶ 100-109). Plaintiffs assert that the ODE and Ross deprived them of an invested property right (their EdChoice scholarships) without due process. (*Id*. at ¶ 103). Whether this Court has jurisdiction to consider Plaintiffs' constitutional due process claim under *Ex parte Young* depends on whether the claim (1) is asserted against a state official in his official capacity; (2) seeks prospective injunctive or declaratory relief and (3) concerns a continuing violation of federal law.   If Plaintiffs fail to meet any of these three

requirements, the *Ex parte Young* exception will not apply and the general rule—sovereign immunity—will divest the Court of jurisdiction to consider their due process claim.

### 1. State Official as Defendant

To meet the first requirement of the *Ex parte Young* exception, Plaintiffs' due process claim must be directed against a state official in his official capacity. In their Complaint, Plaintiffs named both the ODE and Dr. Richard A. Ross, in his capacity as ODE's Superintendent of Public Instruction, as defendants to the action. (*See* Doc. 1, Compl.; Doc. 14, Am. Compl.). As to Ross, it is clear that Plaintiffs have met the first requirement of the *Ex parte Young* exception: Plaintiffs' due process claim is directed at Ross, a state official, in his official capacity. Accordingly, Plaintiffs have met the first requirement of the *Ex parte Young* exception insofar as their claims concern Ross in his official capacity.

Plaintiffs' claim against the ODE does not fare as well, however. The ODE is not a state official, but rather an agency, or arm, of the State. *See* Ohio Rev. Code § 3301.01; *Moss v. Columbus Bd. of Educ.*, No. 2:00-CV-855, 2001 WL 1681117, at *8 (S.D. Ohio Sept. 27, 2001) (Sargus, J.). As the *Ex parte Young* exception applies only to claims asserted against government officials—and not against the State or its agencies—the Eleventh Amendment divests this Court of jurisdiction to consider Plaintiffs' claim insofar as it implicates the ODE. *See Moss*, No. 2:00-CV-855, 2001 WL 1681117, at *8 (dismissing plaintiffs' § 1983 claims against the ODE on sovereign immunity grounds). For this reason, Plaintiffs cannot sustain their federal due process claim against the ODE. Consequently, the Court will proceed with its *Ex parte Young* analysis only as it pertains to Ross.

### 2. Prospective Injunctive or Declaratory Relief

As stated above, the Eleventh Amendment divests this Court of jurisdiction to consider a plaintiff's retrospective claims against government officials; it does not, however, preclude a plaintiff from sustaining claims for prospective injunctive or declaratory relief against those officials. *See generally Ex parte Young*, 209 U.S. at 159–60.  Thus, to satisfy the second prong of the *Ex parte Young* exception, Plaintiffs' due process claim must seek prospective injunctive or declaratory relief. In determining whether Plaintiffs' requested remedies are prospective and equitable or retrospective and monetary, the Court must "examine [the] claims substantively rather than by the form in which they appear." *Hendricks v. Kasich*, No. 2:12-cv-729, 2014 WL 2006800, at *16 (S.D. Ohio May 16, 2004) (Kemp, J.).  Retroactive relief compensates the plaintiff for a past violation of his legal rights, usually resulting in some type of monetary award. *Doe v. Wigginton*, 21 F.3d 733, 736 (6th Cir. 1994).  On the other hand, prospective relief aims to directly bring an end to a present violation of federal law by dictating an official's future conduct.  *Papasan v. Allain*, 478 U.S. 265, 278 (1986); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002).  The Sixth Circuit has cautioned, though, that prospective relief should not automatically be deemed "retrospective" solely because the ultimate judgment may have some effect on the State treasury.  *Wigginton*, 21 F.3d at 237.  When the requested remedy so implicates the allocation of State funds, "[t]he dividing line . . . is whether the money or the non-monetary injunction is the primary thrust of the suit." *Barton v. Summers*, 293 F.3d 944, 949 (6th Cir. 2002).

While the line between permissibly prospective and impermissibly retroactive can be difficult to discern, the rationale behind the distinction is sound:  When a plaintiff seeks retroactive (often monetary) relief, the State, not the nominal official, is the "real, substantial

9

party in interest" responsible for compensating plaintiff with monies paid from the State treasury or public funds. *Wigginton*, 21 F.3d at 236-37. Conversely, when a plaintiff seeks merely to "compel a state officers' compliance with federal law in the future," the named officials are the real party in interest, and the effect on the State treasury is merely ancillary. *Id*.

In conjunction with their federal due process claim, Plaintiffs seek damages in the form of an injunction, declaratory judgment, reinstatement, court costs, and attorney's fees.  The Court will consider each in turn.

### a. Injunction

Plaintiffs allege Ross "continues to deprive Plaintiffs of the valuable property interest of their vouchers without a meaningful opportunity to challenge the denial, without sufficient due process protections to prevent errors." (Doc. 15, Am. Compl. at ¶ 103).  Consequently, Plaintiffs seek an injunction enjoining Ross from continuing to violate these rights in the future. Otherwise stated, Plaintiffs ask the Court to issue an order precluding Ross from permanently terminating their scholarships without first providing them due process.

In his Motion to Dismiss, Ross urges the Court to look past Plaintiffs' semantics and evaluate the substantive, practical implications of Plaintiffs' claims.  Specifically, Ross argues that Plaintiffs in essence "claim they have been financially damaged by ODE's actions and seek to be paid for that damage." (Doc. 20, Defs.' Reply at 2).  However, Ross does not elaborate on his basis for this assertion.  Plaintiffs expressly represent that they do not seek out-of-pocket tuition expenses for past school years or any "monetary damages to compensate them for the Defendants' failure to provide a more robust procedural safeguard." (Doc. 19, Pls.' Memo. Opp. at 6).  Rather, Plaintiffs seek a hearing or some other meaningful avenue by which to challenge the termination of their EdChoice scholarships.

10

The Court finds Plaintiffs' request for injunctive relief is both prospective and equitable. The proposed injunction seeks to compel Ross to comply with federal law in the future, i.e. by providing constitutionally adequate procedural safeguards before permanently depriving Plaintiffs of their interest in their EdChoice scholarships.  Further, this remedy would have only an ancillary effect on the State treasury, e.g., the cost of conducting a hearing.  For these reasons, the Court finds Plaintiffs' request for an injunction satisfies the second prong of the *Ex parte Young* exception.

        **b.**    **Declaratory Judgment**

In their Complaint and Memorandum in Opposition, Plaintiffs phrase their requests for declaratory judgment in the context of their due process claim in two different ways.  Plaintiffs ask the Court to:

1.  Declare that Defendants have violated, and are violating, and will continue to violate, Plaintiffs' procedural due process rights by continuing to deprive Plaintiffs of a valuable property interest without sufficient procedural due process protections. (Doc. 15, Am. Compl. at 21).

2.  Issue a declaratory judgment finding that Ohio Admin. Code Section 3301-11-14 is unconstitutional as applied to them. (Doc. 19, Pls.' Memo. Opp. at 6).

The Court will address each request separately.

Plaintiffs' first request for declaratory judgment asks the Court to declare that Ross has violated, and continues to violate, Plaintiffs' constitutional rights by permanently depriving them of their EdChoice scholarships without due process. This Court addressed an analogous request for declaratory judgment in *Gies v. Flack*, 495 F. Supp. 2d 854 (2007) (Rice, J.).  In *Gies*, plaintiff, a professor, sought a declaration that the defendants, university officials, violated his constitutional rights by failing to provide him with a name-clearing hearing upon his removal as Dean.  *Id*. at 863.  This Court found that while some of plaintiff's requests for declaratory relief

fell outside of the *Ex parte Young* exception, not all did. *Id.* at 863-64. In particular, the Court found plaintiff's request for a declaration that the defendants violated his rights by failing to provide him with a hearing qualified as prospective equitable relief. *Id.* The Court noted that this declaratory judgment request was, in effect, part and parcel of plaintiff's request for injunctive relief (which asked the Court to direct defendants to provide plaintiff with a name-clearing hearing). *Id.* at 864. Thus, the Court concluded that this particular request for declaratory relief was not an impermissible "end run" around sovereignty immunity, and proceeded to consider plaintiff's claims on the merits. *Id.*

As in *Gies*, the Court finds Plaintiffs' first request for relief is not an impermissible "end run" around sovereign immunity, but rather an essential "component of the resolution of [Plaintiffs'] request for injunctive relief." *Id.* The main thrust of this prayer for declaratory judgment is non-monetary injunctive relief: Plaintiffs seek to compel a state official (Ross) to comply with federal law (the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution), which is the essence of *Ex parte Young*'s prospective relief requirement. Moreover, like Plaintiffs' request for injunctive relief, this remedy would have only a minor, ancillary effect on the State treasury, e.g., the cost of conducting a hearing.[4]

Plaintiffs' second request for declaratory judgment asks the Court to find the Ohio Administrative Code's current "request for reconsideration" procedure, as used by Ross in affirming Plaintiffs' scholarship termination, unconstitutional. "An action seeking to enjoin enforcement of an allegedly unconstitutional statute through a suit against state officials charged with its enforcement is not barred by the Eleventh Amendment." *McNeilus Truck & Mfg., Inc. v.*

---

[4] It is true that there may be additional costs to the State depending on the result of the hearing. However, any such expense would relate to the substantive state-law based merits of the decision—which, for reasons stated above, is of no concern to the Court. The Court's focus here is whether the monetary cost associated with remedying the alleged violation of Plaintiffs' due process rights—i.e. the provision of a meaningful opportunity to be heard—significantly implicates the State treasury, irrespective of the hearing's ultimate outcome.

*Ohio ex rel. Montgomery*, 226 F.3d 429, 437 (6th Cir. 2000).  Further, mirroring the reasons stated above, the focus of Plaintiffs' request for declaratory judgment here is prospective and non-compensatory, with only an ancillary effect on the State treasury.

For these reasons, the Court finds Plaintiffs' requests for declaratory relief, in the context of their federal due process claim, satisfy the second prong of the *Ex parte Young* exception.

### c. Reinstatement

Nowhere in Plaintiffs' Amended Complaint do they directly request reinstatement of their EdChoice scholarships in relation to their due process claim.  In their Memorandum in Opposition, however, Plaintiffs ask the Court to reinstate their EdChoice scholarships, "at least until they can be provided with a constitutionally adequate procedure to guard against wrongful deprivation."[5]  Ross contends that this reinstatement request is essentially compensatory monetary relief cloaked in the guise of equity.

As a general rule, the Sixth Circuit has consistently held that reinstatement claims "are prospective in nature and appropriate subjects for *Ex parte Young* actions." *See, e.g.*, *Carten v. Kent State University*, 282 F.3d 391, 396 (6th Cir. 2002); *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 459 (6th Cir. 1998).[6]  Moreover, Plaintiffs have expressly represented to the Court that they do not seek (1) "monetary damages to compensate them for the Defendants' failure to provide a more robust

---

[5] Plaintiffs do not provide any citation to their Complaint or Amended Complaint as the basis for this relief.  Ross does not raise this issue in his Motion to Dismiss.  In the interest of completeness and judicial economy, the Court will address Plaintiffs' informal request for reinstatement in regards to their federal due process claim notwithstanding the absence of a formal prayer for relief.

[6] The Court acknowledges that a majority of these cases concern reinstatement in the employment context—a situation very different from the one now before the Court. While some level of reinstatement is often necessary to give teeth to a due process judgment, in light of the particular facts, circumstances, and property interests allegedly involved in this case, the Court is unsure as to what degree reinstatement here would be warranted.  However, this is of little import at this stage of the proceedings, as "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim," but rather focuses on the allegations alone. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 646 (2002).

procedural safeguard"; or (2) "damages for the out-of-pocket expenses incurred to keep their children enrolled in the private schools where they began their education on vouchers." (Doc. 19, Pls.' Memo. Opp. at 6). Ross did not directly challenge Plaintiffs' assertions in his Reply; rather, he provided only broad, unsupported, conclusory statements, which the Court finds unavailing. (*See, e.g.*, Doc. 20, Defs.' Reply at 2 ("[Plaintiffs] claim they have been financially damaged by ODE's actions and seek to be paid for that damage.")). Therefore, based on Plaintiffs' unequivocal representations as well as the case law cited above, the Court finds that Plaintiffs' reinstatement request qualifies as prospective equitable relief and falls within the boundaries of the *Ex parte Young* exception.

### d. Attorney's Fees and Costs

Plaintiffs also seek attorney's fees and court costs in bringing their action. In his Motion to Dismiss, Ross did not directly reference or contest this specific prayer for relief, but in the interest of completeness, the Court will address the propriety of Plaintiffs' request for court costs and attorney's fees under the *Ex parte Young* exception here.

This Court, the Sixth Circuit, and the United States Supreme Court have all held that requests for attorney's fees and court costs do not defeat an otherwise proper application of the *Ex parte Young* exception. *See Campbell v. Miller*, 835 F. Supp. 2d 458, 466 (S.D. Ohio 2011) (Smith, J.) (rejecting the notion that a request for attorney's fees and costs renders the *Ex parte Young* exception inapplicable); *Uttilla v. Tennessee Highway Dep't*, 208 F.3d 216 (6th Cir. 2000) ("[I]t is well settled that an award of attorney's fees ancillary to prospective relief is not barred by Eleventh Amendment immunity.") *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989) ("[T]he Eleventh Amendment has no application to an award of attorney's fees, ancillary to a grant of prospective relief, against a State."). The Court finds no reason to depart from this

well-settled principle here.  Accordingly, the Court finds Plaintiffs' requests for attorney's fees and court costs, ancillary to their requests for prospective injunctive and declaratory relief, falls under the ambit of *Ex parte Young*.

In sum, based on the law and analysis set forth above, the Court finds Plaintiffs' federal due process claim seeks prospective equitable relief, thereby satisfying the second prong of the *Ex parte Young* exception.

### 3. Continuing Violation of Federal Law

To meet the third and final requirement of the *Ex parte Young* requirement, Plaintiffs' due process claim must concern an ongoing violation of federal law.  Plaintiffs assert Ross has continually denied them a meaningful opportunity to be heard in regards to the deprivation of their EdChoice scholarship property rights.  They argue that this constant failure to provide them with constitutionally adequate procedural safeguards constitutes a continuing violation of federal law.  Ross contends that Plaintiffs' discontent is based not on a continuous violation of federal law, but on the static, one-time decision of the ODE to terminate Plaintiffs' scholarship.

The Court finds Plaintiffs' due process cause of action satisfies the third prong of the *Ex parte Young* exception.  If the Court were addressing Plaintiffs' state law declaratory judgment action, which essentially asked the Court to address and overturn the ODE's state law-based termination decision on its merits, Ross's arguments would be well-taken.  However, Plaintiffs' due process claim does not center on the ODE's one-time decision, but rather the ODE's perpetual denial of any meaningful opportunity to challenge that decision.   Simply put, Plaintiffs' due process claim challenges the process, not the substance.  Plaintiffs allege that over the past two years the ODE has continually deprived them of a property interest, i.e., an EdChoice scholarship, without due process and in violation of their constitutional rights.  This

claim falls squarely within the third prong of the *Ex parte Young* exception: it alleges an ongoing (from 2012-present) violation of federal law.

For the foregoing reasons, the Court finds Plaintiffs have met all three requirements of the *Ex parte Young* exception to sovereign immunity in regards to their federal due process claim. Therefore, the Court has jurisdiction to consider Plaintiffs' due process cause of action as set forth in Count I of the Amended Complaint.

## IV. CONCLUSION

The Court **GRANTS** the Ohio Department of Education's Motion to Dismiss. All of Plaintiffs' claims against the Ohio Department of Education are barred by the doctrine of sovereign immunity and are hereby dismissed with prejudice.

The Court **GRANTS in part and DENIES in part** Dr. Richard A. Ross's Motion to Dismiss. Plaintiffs' state law-based declaratory judgment action (Count II of the Amended Complaint) is barred by the doctrine of sovereign immunity and is hereby dismissed with prejudice. Plaintiffs' due process claim (Count I of the Amended Complaint), however, falls within the *Ex parte Young* exception to sovereign immunity. Accordingly Richard A. Ross's Motion to Dismiss for lack of jurisdiction is not well-taken as to Count I, and Plaintiffs are permitted to proceed with their federal due process claim against Richard A. Ross in his official capacity.

The Clerk shall remove Document 16 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**